**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CIVIL ACTION NO. 5:10-CV-319 (MTT)** |
| | ) |
| **$19,054.00 IN UNITED STATES FUNDS,** | ) |
| | ) |
| **Defendant Property,** | ) |
| | ) |
| **YOELKYS MARTINEZ-DIAZ,** | ) |
| | ) |
| **Claimant.** | ) |

## <u>ORDER</u>

This matter is before the Court on the Plaintiff's Motion for Summary Judgment.
(Doc. 31).  The Claimant, who is *pro se* and currently incarcerated in federal prison in
Florida on an unrelated conviction, contends the Defendant Property was loaned to him
by two friends, Jolver Blanco Acosta and Pedro Jose Canals, and is not related to an
illegal drug transaction.   For the following reasons, the Motion is **DENIED**.

## I.   FACTUAL AND PROCEDURAL HISTORY

In February 2010, Sergeant Gary Long of the Lamar County Sherriff's Office and
Lieutenant Cory Bone of the Greensboro Police Department observed Claimant Yoelkys
Martinez-Diaz speeding in excess of 100 miles per hour.[1]  (Doc. 31-2 at 1).  The officers
attempted to stop Martinez-Diaz; however, he left the interstate without signaling,
reentered the interstate, and traveled approximately two more miles before finally
stopping.  Martinez-Diaz was arrested for speeding, reckless driving, and fleeing and

---

[1] Lieutenant Bone of the Greensboro Police Department was "taking part in a ride along" with
Sergeant Long at the time of the incident.  (Doc. 31-4 at 2).

attempting to elude.  (Doc. 31-2 at 2).  Martinez-Diaz's vehicle was searched and the officers found "bundles of United States currency" in a green tote bag near the rear cargo area and in the glove compartment.  (Doc. 31-2 at 2).  The money in these bundles totaled $19,054.00.  (Doc. 31-2 at 3).

Along with Martinez-Diaz, there were three passengers in the vehicle, Adrian Blanco, Roxana Barrios-Borges and Yordan Alfonso Barrios.  (Doc. 31-2 at 2).  Additional money, totaling $14,300, was found in Barrios-Borges's purse and in Blanco's jacket pocket.  Thus, the total quantity of money seized was $33,354.00.  It is unclear why this action only involves $19,054.00, rather than the entire $33,354.00.  Because the Defendant Property in this action is $19,054.00, the Court presumes Martinez-Diaz only filed a claim for the $19,054.00.[2]  In a pleading, Martinez-Diaz states that he "has already been swindled out of approx. $14,000.00," suggesting perhaps that he or his previous attorney failed to perfect the claim for the $14,300.00.  (Doc. 35 at 5).

On the roadside, Martinez-Diaz told the officers he was employed by Gonzales Trucking, that all the money in the vehicle belonged to him, and that some of the currency found in the vehicle was money he had saved and some of the money, $5,000.00, was given to him by a friend.  (Doc. 31-2).  The officers' drug dog allegedly gave a positive response for the odor of illegal drugs on the rear passenger side front seat, the floor board area, and on the green tote bag where a portion of the money was found.  (Doc. 31-2 at 3).  No illegal drugs were found.

---

[2] Pursuant to 18 U.S.C. § 983, the Government is required to follow specific protocol with regard to notification of interested parties to allow a party time to claim the seized property.  The Claimant then has to file a claim, identifying the specific property and his interest in such property.  After a claim has been filed, generally, the Government must either commence a judicial civil forfeiture proceeding or return the seized property.  See 18 U.S.C. § 983.

After his arrest, Martinez-Diaz was interviewed.  He claimed he did not immediately stop because he was scared.  He also explained that he planned to use the money to buy a truck.  (Doc. 31-2 at 4).  Both Barrios-Borges and Blanco told the officers that the money found on their persons was Martinez-Diaz's money.  Barrios-Borges told the officers that the money was to be used to buy a truck.  (Doc. 31-2 at 4-5).  Blanco told the officers that he did not know where Martinez-Diaz had obtained the money.  Further, Barrios told the officers that Martinez-Diaz had borrowed the money from individuals that Barrios did not know and that the money had been counted by the passengers while inside the vehicle.  (Doc. 31-2 at 5).  Each of the passengers signed a voluntary disclaimer of interest and ownership for the currency.

Five months later, in July 2010, Martinez-Diaz was stopped while driving a tractor trailer truck in Brooks County, Texas.  Marijuana was found in the trailer of his truck, and he was arrested.  Martinez-Diaz eventually plead guilty to one count of possession with intent to distribute 1,349 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  (Doc. 31-2 at 6).  In March 2011, Martinez-Diaz was sentenced to fifty-seven months in prison.  (Doc. 31-2 at 6).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop. in*

*Greene and Tuscaloosa Cntys.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  The burden

rests with the moving party to prove that no genuine issue of material fact exists.  *Info.*

*Sys. & Networks Corp*, 281 F.3d at 1224.

"'If the moving party bears the burden of proof at trial, the moving party must

establish all essential elements of the claim or defense in order to obtain summary

judgment.'"  *Anthony v. Anthony*, 642 F. Supp. 2d 1366, 1371 (S.D. Fla. 2009) (quoting

*United States v. Four Parcels of Real Property in Greene and Tuscaloosa Cntys.*, 941

F.2d 1428, 1438 (11th Cir. 1991)).  The moving party must carry its burden by

presenting "credible evidence" affirmatively showing that, "on all the essential elements

of its case, on which it bears the burden of proof at trial, no reasonable jury could find

for the non-moving party." *Four Parcels of Real Property in Greene and Tuscaloosa*

*Cntys.*, 941 F.2d at 1438.  In other words, the moving party's evidence must be so

credible, that if not controverted at trial, the party would be entitled to a directed verdict.

*Id.* at 1438

"If the moving party makes such an affirmative showing, it is entitled to summary

judgment unless the nonmoving party, in response, 'come[s] forward with significant,

probative evidence demonstrating the existence of a triable issue of fact.'" *Id.* at 1438

(quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir.

1991)) (alteration in original).  However, "credibility determinations, the weighing of the

evidence, and the drawing of legitimate inferences from the facts are jury functions, not

those of a judge. … The evidence of the non-movant is to be believed, and all justifiable

inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

255 (1986).  Thus, the Court "'can only grant summary judgment if everything in the

record demonstrates that no genuine issue of material fact exists.'" *Strickland v. Norfolk Southern Railway Company*, --- F.3d ----, 2012 WL 3640797 (11th Cir.) (quoting *Tippens v. Celotex. Corp.*, 805 F.2d 940, 952 (11th Cir. 1992)).

## III.   DISCUSSION

### A.   Civil Forfeiture Pursuant to 21 U.S.C. § 881

Pursuant to 21 U.S.C. § 881, civil forfeiture to the United States is permitted for "[a]ll moneys … furnished or intended to be furnished by any person in exchange for a controlled substance …  in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys … used or intended to be used to facilitate any violation of this subchapter."  Civil forfeiture actions brought pursuant to § 881(a)(6) are governed by the Civil Asset Forfeiture Reform Act of 2000 (CAFRA).[3]  CAFRA provides:

> In a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property—(1) the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture; (2) the Government may use evidence gathered after the filing of a complaint for forfeiture to establish by a preponderance of the evidence, that the property is subject to forfeiture; and (3) if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense.

18 U.S.C. § 983(c).

CAFRA substantially altered the landscape for civil forfeiture actions, a fact that the Government seems not to fully appreciate.  This is understandable given that courts too have not always acknowledged CAFRA's impact, particularly in the context of summary judgment motions.  Prior to CAFRA, the Government discharged its burden of

---

[3] Pub. L. No. 106-185, 114 Stat. 202, codified in part at 18 U.S.C. § 983.

proof in civil forfeiture actions by demonstrating that "probable cause" existed to seize the property. *United States v. $121,100.00*, 999 F.2d 1503, 1505 (1993).  The Government, to establish probable cause, did not have to "actually prove by a preponderance of the evidence a substantial connection to drug dealing."  *United States v. $41,305.00 in Currency and Traveler's Checks*, 802 F.2d 1339, 1343 (11th Cir. 1986). Rather, the Government only had to establish "reasonable grounds to believe that a substantial connection exists between the money seized" and the illegal activity.  *Id.* This probable cause standard was the same standard used to determine the legality of arrests, searches and seizures in criminal law.  *United States v. $242,484.00*, 389 F.3d 1149, 1160 (11th Cir. 2004).  Given this lenient standard, it is not surprising that courts permitted the Government to rely on a broad range of range of evidence to establish probable cause, much of which would be inadmissible under the Federal Rules of Evidence.  Just as an officer seeking a search warrant could rely on the rankest of hearsay, so too could the Government in civil forfeiture actions.  *Four Parcels of Real Property in Greene and Tuscaloosa Cntys.*, 941 F.2d at 1440.  Also, evidence of other convictions was admissible to establish probable cause without any regard to admissibility under Fed. R. Evid. 404(b) or any other provision of the Federal Rules of Evidence allowing the admission of extrinsic act evidence.

CAFRA raised the Government's burden to a preponderance of the evidence standard.  18 U.S.C. § 983(c)(1).  Given the substantial change brought by CAFRA to the Government's burden of proof, it perhaps is confusing that courts continue to cite pre-CAFRA cases for the scope of evidence the Government can rely on to discharge its burden.

Although the Eleventh Circuit has not yet squarely addressed this issue, the Fifth

Circuit has.  In *United States v. $92,203.00,* 537 F.3d 504 (5th Cir. 2008), the

Government moved for summary judgment based on an agent's affidavit explaining the

basis for the Government's belief that the currency was subject to forfeiture.  Although

this affidavit was based largely on hearsay, the district court granted the Government's

motion.  On appeal, the Fifth Circuit acknowledged that, pre-CAFRA, "normal summary

judgment" principles and rules did not apply and normally inadmissible evidence could

be used to seize the property of citizens.  *$92,203.00*, 537 F.3d at 508.  Congress, the

Court noted, found this unacceptable:

> "The Government under the [pre-CAFRA] approach, need not
> produce any admissible evidence and may deprive citizens of
> property based on the rankest of hearsay and flimsiest evidence.
> This result clearly does not reflect the value of private property in
> our society and makes the risk of an erroneous deprivation
> intolerable."

*Id.* at 509 n. 2 (quoting H.R. Rep. No. 106-192, 1999 WL 406892, *11).  This change in

the Government's burden of proof, the Fifth Circuit held, meant that the Government

could no longer rely on hearsay to meet its burden of proving by a preponderance of the

evidence that property was subject to forfeiture.

This conclusion, the Fifth Circuit continued, was buttressed by canons of

statutory construction.  CAFRA permits the Government to seek injunctive relief to

secure, maintain or preserve property the Government contends is subject to civil

forfeiture.  18 U.S.C. § 983(j).  To obtain a temporary restraining order, CAFRA requires

the Government only to prove it has probable cause to contend the property is subject

to forfeiture, and the Court, at that TRO hearing, "may receive and consider . . .

evidence and information that would be inadmissible under the Federal Rules of

Evidence." 18 U.S.C. § 983(j)(3)-(4).  This led the Fifth Circuit to conclude that CAFRA's stricter burden of proof to prevail on the merits, while allowing the Government to rely on hearsay and other inadmissible evidence at TRO hearings, clearly demonstrated that "Congress intended to end the practice of reliance on hearsay in civil forfeiture decisions."  *$92,203.00*, 537 F.3d at 510.[4]

It is also unclear whether the Government fully appreciates its procedural posture.  The Government repeatedly contends that it "has established by a preponderance of the evidence that there is a nexus between the Defendant Property and drug activity," and thus summary judgment is appropriate.  (Doc. 36 at 3).  The preponderance of the evidence burden requires the *trier of fact* to weigh the evidence and determine whether some fact is more probable than not before it may find in favor of the Government.  Since the enactment of CAFRA, a civil forfeiture case at the summary judgment stage is no different than any other civil case. Thus, because the Court cannot act as a trier of fact, make credibility determinations, and resolve factual disputes at the summary judgment stage, it would be inappropriate for the Court to determine if the Government has shown by a preponderance of the evidence that there is a nexus between the Defendant Property and drug activity.  Instead, at the summary judgment stage, the Court must determine whether a genuine issue of material fact

---

[4] CAFRA brought another change to civil forfeiture actions that has received even less recognition.  Prior to CAFRA, once the Government established probable cause, "the burden of proof shift[ed] to the claimant" to prove that the property was not subject to forfeiture.  *Four Parcels of Real Property in Green and Tuscaloosa Cntys.*, 941 F.2d at 1438.  However, CAFRA is very specific about the division of the burden of proof.  The Government bears the burden of proof generally.  18 U.S.C. § 983(c)(1)-(3). CAFRA places the burden of proof on the claimant only when the claimant asserts an "innocent owner" defense. 18 U.S.C. § 983(d)(1).  Thus, cases suggesting that under CAFRA the burden of proof always shifts to a claimant after the Government has "met its burden," are suspect.

exists with regard to the Government's burden of proving by a preponderance of the evidence that the Defendant Property is subject to civil forfeiture.

### B.    The Court's Analysis

The Government does not contend that the money was intended to be used to facilitate the commission of a criminal offense.  (Doc. 31-1 at 5 n.2).  Rather the Government contends this is a "non-facilitation" case, meaning the Government's theory is that the money is derived from or traceable to a drug exchange, rather than that the money was used or intended to be used to facilitate a criminal offense.  (Doc. 31-1 at 5 n.2); 21 U.S.C. § 881(a)(6).  The Government gives five reasons to support its contention that the Defendant Property is subject to forfeiture: (1) Martinez-Diaz's subsequent arrest and conviction on drug trafficking charges five months after the traffic stop and seizure of the money; (2) the drug dog's positive response to the odor of illegal drugs on Martinez-Diaz's vehicle and the money at the time of the traffic stop; (3) Martinez-Diaz's initial attempt to flee from law enforcement when the officers tried to stop him for speeding; (4) the quantity of the money and the manner in which it was being transported; and (5) the inconsistent statements made by Martinez-Diaz regarding the money.  (Doc. 31-1).

Martinez-Diaz, through his responses to the Government's Interrogatories and Request of Production of Documents (Doc. 25) and to the Government's Motion for Summary Judgment (Doc. 35), offers explanations for his subsequent drug arrest and conviction, his attempt to flee during the traffic stop, the source of the money, and his plan for the use of the money.

1.     *Martinez-Diaz's Subsequent Arrest and Conviction*

Five months after the Defendant Property was seized, Martinez-Diaz was arrested, and he eventually pled guilty to one count of possession with intent to distribute 1,349 kilograms of marijuana.  He is currently serving his fifty-seven month sentence.  The Government, generally, alleges that this arrest constitutes drug-related criminal history and is probative of a substantial connection between illegal narcotics activity and the money seized five months prior to the arrest.  Martinez-Diaz alleges that his drug conviction is unrelated to the money found in his vehicle in February 2010.  He alleges he made a "terrible error of judgment" when he decided to drive the tractor trailer truck and transport the illegal drugs in July 2010.  (Doc. 35).  Martinez-Diaz admits that he is guilty of that crime, but claims his actions were unrelated to the seized money.

The Government relies on pre-CAFRA cases or post-CAFRA cases citing pre-CAFRA authority for the blanket proposition that a claimant's narcotics-related criminal history is admissible to establish that the Government is entitled to civil forfeiture of property.  However, this fails to take into account the impact of CAFRA.  Prior to CAFRA's enactment, a claimant's prior drug convictions were admissible because they were relevant to the determination of whether the Government had probable cause to seize the Defendant Property.   This made sense.  When the Government's burden was one of probable cause, an officer's mere knowledge that a claimant had been convicted of drug offenses, without necessarily knowing the details of the conviction, would certainly be relevant to that probable cause determination.  Now, the Government must prove by a preponderance of the evidence that the Defendant Property is subject to civil

forfeiture, and the admissibility of Martinez-Diaz's criminal conviction must be determined by the Federal Rules of Evidence.

Here, the Government cites no evidentiary basis for admission of Martinez-Diaz's subsequent criminal conviction.[5]   The Government seems to argue that Martinez-Diaz's subsequent conviction is admissible to prove that, at the time the Defendant Property was seized, Martinez-Diaz was acting in accordance with his conduct at the time of his criminal conviction, a use specifically prohibited by Federal Rule of Evidence 404(b)(1).   Nevertheless, given the circumstances of the subsequent conviction, the Court agrees that the conviction is admissible for a purpose allowed by Rule 404(b).

Moreover, the Government advances a more narrowly targeted argument, effectively arguing that the subsequent offense is not extrinsic but rather related to the Defendant Property.   The Government contends:

> Mr. Martinez-Diaz was smuggling illegal drugs in a tractor-trailer truck, and was trafficking drugs in this truck only a few months after he claims he was carrying the Defendant Property for the purpose a buying a truck. … The similarities here are too close to ignore.  If Mr. Martinez-Diaz was lying in this case about his plans to buy a truck with the Defendant Property, then he has offered no legitimate source for the currency.   If he was telling the truth, his subsequent arrest reveals his actual purpose for possessing and transporting the Defendant Property, and connects the money directly to the illegal drug trade.

---

[5] The Government has made no foundational showing with regard to Martinez-Diaz's subsequent criminal conviction.  Although the Government directs the Court to the appropriate federal criminal docket number, it does not provide the Court with any documents pertaining to Martinez-Diaz's conviction.  Moreover, it is proper practice "on a Rule 56 motion [] to authenticate documents through affidavits or depositions." *United States Aviation Underwriters, Inc. v. Yellow Freight System, Inc.*, 296 F. Supp. 2d 1322, 1334 (S.D. Ala. 2003).   The Government neither provides the appropriate documents regarding Martinez-Diaz's conviction, nor does it properly authenticate such documents.  Because Martinez-Diaz effectively admits that this evidence could be reduced to admissible, authenticated form at trial, the Court will consider the conviction.

(Doc. 31-1 at 8-9).  This were you lying then or are you lying now theory, while interesting, does not, as a matter of law, support the Government's contention that the seized money is connected to illegal narcotics activity.

Moreover, Martinez-Diaz has adduced other evidence suggesting that the money was loaned to him for the purpose of purchasing his own truck.  (Doc. 35 at 3).  He provides the Court with two affidavits from Jolver Blanco Acosta and Pedro Jose Canals.  (Doc. 25 at 10-11).  In the affidavits, Acosta and Canals swear that they each loaned Martinez-Diaz $10,000.00.  Martinez-Diaz further states that the truck he was planning on purchasing with the loaned money "was black and was a 2005 freightliner Coronado with two sleepers in the back. It was located at RCI (truck dealer) in Atlanta, GA."  (Doc. 25 at 9).

In sum, even assuming that Martinez-Diaz's subsequent conviction is admissible under the Federal Rules of Evidence, it is not sufficient, standing alone or in conjunction with the Government's other evidence, to establish that no genuine issues of material fact exist as to whether the seized money was connected to illegal narcotics activity.

　　　　2.　　*The Drug Dog's Positive Alert to Martinez-Diaz's Car and Green Tote*

The officers' drug dog detected the odor of narcotics on Martinez-Diaz's vehicle and the money.[6]  Martinez-Diaz concedes that "the K9 detect[ed] a scent of marijuana" in a green bag.  (Doc. 35 at 4).  But argues that it is "speculat[ive]" as to whether the

---

[6] Here, again, the Government does not attempt to lay an appropriate foundation for the admissibility the drug dog's positive alert.  While Officer Long's Declaration states that the drug dog is a "dog trained to detect the odor of illegal narcotics," more than this assertion would be required to lay the appropriate foundation for the drug dog's positive alert at trial.  (Doc. 31-4 at 5).

drug dog was responding positively to the bag or the money that was in the bag.  (Doc. 35 at 4).

In the Eleventh Circuit, a drug dog's alert is probative, but not dispositive, of a substantial connection between the seized money and substantial drug activity.  *See United States v. $183,791.00*, 391 Fed. App'x  791 (11th Cir. 2010).[7]  The Eleventh Circuit has recognized "that other courts have not found dog alerts compelling in light of evidence that a large percentage of U.S. currency is contaminated by drug residue."  *Id.* at 795.  However, the Eleventh Circuit has declined to adopt that theory where the claimant does not present evidence to support it.  *Id.*  Therefore, the positive drug dog alert is some evidence that the seized money is connected to illegal drug activity, but it does not establish as a matter of law, by itself or cumulatively, that the Defendant Property is subject to forfeiture.

3.      *Martinez-Diaz's Behavior and Statements during the Traffic Stop*

The Government also points to Martinez-Diaz's refusal, initially, to stop for the officers and to his inconsistent statements regarding the Defendant Property.  Martinez-Diaz alleges that he did not initially stop because he was scared.  The Government cites *United States v. $280,505.00*, 655 F. Supp. 1487 (S.D. Fla. 1986), to support its argument that fleeing from the police indicates the illegal nature of the currency.  The facts in *$280,505.00* are vastly different than the facts here.  Not only was the quantity of seized money more than fourteen times the quantity here, but marijuana seeds and

---

[7] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2.

stems were also found in the claimant's vehicle.  *$280,505.00*, 655 F. Supp. at 1501.[8]

Nevertheless, it is undisputed that Martinez-Diaz initially fled from the officers; therefore,

his behavior is probative of whether the Defendant Property is connected to some illegal

narcotics activity.

The Government further contends that Martinez-Diaz made inconsistent

statements following the traffic stop.  Originally, Martinez-Diaz told the officers that a

friend had given him $5,000.00.  However, he now alleges, and provides affidavits to

support, his contention that two individuals, each, loaned him $10,000.00.   Moreover,

the Government alleges that Martinez-Diaz claimed all the money found in the car and

on his passengers at the time of the traffic stop.  However, he now only contests the

forfeiture of $19,054.00, instead of the entire $33,354.00.

Evidence of inconsistent statements is probative of whether seized funds are

substantially connected to narcotics activity.  *$242,484.00*, 389 F.3d at 1164.  Martinez-

Diaz provides no reason for initially telling the police officers that only $5,000.00 was

borrowed from a friend.  Nor has he provided any reason for not claiming the entire

quantity of money seized from his vehicle and the passengers in his vehicle.  However,

Martinez-Diaz has provided the Court with two affidavits to support his contention that

the Defendant Property was loaned money, not drug proceeds or money related to any

drug transaction.   (Docs. 25 and 35).

Thus, Martinez-Diaz's behavior and inconsistent statement case doubt on his

contention that the Defendant Property was obtained from a legitimate source.  They

---

[8] Further, this case was decided prior to CAFRA's enactment, when the Government's burden
was to show that it had probable cause to seize the defendant property.  Although that does not
change the district court's determination that fleeing from the police indicates the illegal nature
of the currency, it no doubt impacted the overall summary judgment analysis.

are not, however, sufficient to establish as a matter of law that Martinez-Diaz's money was connected to illegal narcotics activity.

4.   <em>The Defendant Property</em>

Last, the Government alleges that the Defendant Property is a "large amount of cash" and was separated into $1,000.00 rubber banded bundles located in a green tote and in the glove compartment.  (Doc. 31-1 at 11).  Martinez-Diaz alleges that the money was wrapped in rubber bands and separated so it was easier to count.  (Doc. 25).  He alleges that the money was "given to [him] in cash."  (Doc. 25 at 6).  He also alleges that some of the money was "gathered after cashing money orders" and that some of the money came from his savings.  (Doc. 25; Doc. 35 at 5).

The quantity of money and manner in which it was being transported can be "highly probative of a connection to some illegal activity."  *$183,791.00*, 391 Fed. App'x at 795 (internal quotations and citations omitted).  Further, the Eleventh Circuit has noted that drug dealers operate almost exclusively in cash.  *$242,484.00*, 389 F.3d at 1161.  However, the quantity of money found is insufficient by itself, even under the pre-CAFRA probable cause standard, to demonstrate a connection, as a matter of law, to illegal drugs. *United States v. 121,100.00*, 999 F.2d 1503, 1507 (11th Cir. 1993).

First, the Court notes that the quantity of the money here is not nearly as high as the defendant property discussed in Eleventh Circuit cases that have concluded that the quantity of cash is highly probative of a connection to some illegal activity.  Here, although the seized money was bundled and located in a green tote bag and glove compartment, Martinez-Diaz has offered reasons why this was the case.  Further, the quantity of money correlates to the price it would cost Martinez-Diaz to purchase a

-15-

truck.   Thus, although the quantity of money—$19,054.00—and manner in which it was bundled is somewhat probative of a connection to illegal activity, it is not dispositive.

## IV.   CONCLUSION

The Government has come forward with substantial evidence suggesting a connection between the Defendant Property and narcotics activity.  However, Claimant Martinez-Diaz has also come forward with evidence tending to prove the money was not connected to narcotics activity.  While some facts are undisputed, those facts are not sufficient to establish as a matter of law that the Government has proven by a preponderance of the evidence that the Defendant Property is subject to civil forfeiture. Accordingly, the Government's Motion for Summary Judgment is **DENIED**.

**SO ORDERED**, this the 17th day of September, 2012.


S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT